UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**RICHARD D KNECHT**,<br><br>Debtor. | Case No. **08-61666-13** |

*MEMORANDUM of DECISION*

At Butte in said District this 12th day of March, 2009.

In this Chapter 13 bankruptcy, after due notice, a hearing was held February 17, 2009, in Billings on confirmation of the Debtor's First Amended Chapter 13 Plan (hereinafter the "Plan") filed February 12, 2009, together with the Trustee's objection thereto. The Debtor Richard D. Knecht ("Richard") appeared at the hearing and testified, represented by attorney James A. Patten of Billings, Montana ("Patten"). The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, appeared at the hearing in opposition to confirmation based upon 11 U.S.C. § 1322(b)(1) alleging the Richard's Plan unreasonably discriminates among unsecured creditors because Richard proposes to pay approximately $36,744.00 on his student loan debt over the life of the Plan, but pay nothing to other general unsecured creditors. No exhibits were offered into evidence, but the Court takes judicial notice of the record in this case. The parties have both filed post-hearing briefs and the matter is now ready for decision. After reviewing the record and applicable law, and for the reasons set forth below, the Trustee's objection to confirmation is sustained and confirmation of Richard's Plan is denied.

Richard's Plan provides for payments of $1,810.00 per month for 60 months, for total

1

plan payments of $108,600.00 over the life of Richards's Plan. The Trustee filed an Objection to confirmation of Richard's Plan on February 13, 2009, arguing that "Debtor is attempting to separately classify the Department of Health and Human Services separate and apart from the class of general unsecured creditors. The Debtor's classification may not be reasonable and may be prohibited by 11 U.S.C. § 1322(b)(1)."

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan. At issue is whether Richard's Plan discriminates unfairly against the class of unsecured claims in violation of § 1322(b)(1). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

## FACTS

Richard and the Trustee filed the following stipulated facts on February 24, 2009, at docket entry no. 27:

1. The total unsecured claims scheduled on the Debtor's Schedules D, E, and F total $214,793.02.

2. The Internal Revenue Service filed a Proof of Claim asserting, among others, a general unsecured claim of $84,536.38 which is $8,473.18 less than the general unsecured claim scheduled by the Debtor in Schedule E.

3. The U.S. Department of Health and Human Services filed a Proof of Claim asserting a general unsecured claim in the amount of $77,137.25 which is $13,625.94 more than scheduled by the Debtor on Schedule F.

4. American Express has filed a Proof of Claim asserting a general unsecured claim in the amount of $14,266.05 which is $30.00 more than that scheduled by the Debtor in Schedule F.

5.   Midland Credit has filed a Proof of Claim asserting a general unsecured claim of $8,580.43 which is $368.34 more than scheduled by the Debtor in Schedule F.

6.   The bar date for non-governmental creditors to file claims is April 30, 2009.

7.   Based upon the Proofs of Claims filed to date, and the Debtor's Schedules D, E, and F, there are general unsecured claims in the amount of $220,344.12.

8.   The general unsecured claim of the U.S. Department of Health and Human Services represents 35% of the total general unsecured claims.

9.   The Debtor's Plan will pay a total of $80,400.00 to be distributed to the priority and general unsecured claims. The Internal Revenue Service has filed a priority claim in the amount of $43,656.00, leaving $36,744.00 to be distributed on account of the general unsecured claims.

Additional facts are taken from the testimony at trial and the case docket. Richard is a 53-year-old, self-employed medical doctor who has worked for the past ten years at the Indian Health Service at the Crow Indian Reservation in Big Horn County, Montana. Richard owns a home in Hardin, Montana valued at $74,500.00, which home is encumbered by a first mortgage in the amount of $60,661.54. Pursuant to Schedules B and C, Richard has personal assets valued at $94,376.08, of which $54,963.00 is subject to various exemptions.

Richard lists no dependents on his Schedule I. Richard's average monthly income is $18,500.00. Richard's average monthly expenses are $16,837.10, which amount includes monthly estimated taxes of $7,400.00, ongoing medical training, seminars and travel of $2,700.00 per month, $945.00 per month for health insurance and $2,000.00 per month for medical and dental expenses.

Richard testified that he practices emergency room medicine. Although Richard is not

3

certified to practice emergency room medicine, he was previously certified as a family practice physician, which qualifies him to work in an emergency room.  That certification has lapsed and Richard is working on regaining his certification as a family physician, which requires that Richard attend courses, complete 300 credit hours and take an exam.  Richard testified that he has accepted a position as the director of the emergency room at a hospital in Moab, Utah and is leaving his contract service position with the Indian Health Service.

Richard entered into a Loan Repayment Program Contract with the U.S. Department of Health and Human Services ("HHS") in 1997.  Richard's agreement with HHS requires that Richard practice in areas that are "under-served."  The attachments to HHS' proof of claim suggest that in October of 1999, Richard entered into a Repayment Agreement with HHS, agreeing to pay at least $850.00 per month on his student loan debt, which at that time totaled $55,018.32, consisting of principal, interest and other charges.  It appears that Richard's last voluntary payment of $850.00 was made to HHS on March 22, 2004.  A subsequent payment of $645.00 was made on September 20, 2006, but contains the notation "DOJ," which the Court presumes means the Department of Justice.  HHS' attachments to its proof of claim further suggest that Richard has not made a payment to HHS since September 20, 2006, and as of Richard's petition date, Richard owed $31,211.59 in interest and $45,925.66 in principal, for a total obligation of $77,137.25.

Richard did not testify as to whether he seeks to cure a default or arrearage on his student loan debt.  In addition, Richard's Plan is silent on this fact.

Richard testified that he has given ten years of service to an under-served population.  During that time, Richard claims he has tried to repay his debt to HHS, to no avail.  Richard

seeks to discriminate among his unsecured creditors now, by repaying HHS to the exclusion of other creditors, because: (1) he may not survive long enough or work long enough to repay the amount he owes HHS; and (2) his ten years of service to an under-served population has not been recognized by anyone and "should count for something." Richard explained that his practice in emergency room medicine has been extremely hard on his health. Richard has diabetes, hypertension, high blood pressure, sleep apnea, and is obese. Richard did not suffer from these ailments ten years ago.

Notwithstanding the extreme pressure associated with emergency medicine, Richard intends to continue working in emergency medicine during the term of his Plan because he makes more money in that particular medical field. However, Richard intends to give up emergency medicine at the conclusion of his Plan term and may work only part-time in family medicine.

Without the proposed discrimination, Richard speculates that he would owe HHS $70,000.00 or $80,000.00 at the end of his Plan term. Richard claims he would not be able to repay that debt with his post-bankruptcy income.

The particular provision of Richard's Plan that is at issue reads as follows:

> (e) Unsecured Claims. After the payments specified above, the Trustee shall pay dividends to allowed unsecured, nonpriority claims as follows:
>
>> Class (e)1: The claim of the United States of America on behalf of the Department of Health and Human Services shall be paid first after payment of the impaired and priority claims.
>
>> Class (e)(2): The remaining general unsecured claims shall receive a pro rata share of any amounts paid after satisfaction of the Class (e)-1 claim.

Richard testified that he could carry out his Plan without the proposed discrimination, but would

then owe a huge amount of money to HHS at the end of his Plan term. The Trustee called no witnesses and offered no evidence to the contrary, and thus Richard's testimony is uncontroverted.

## DISCUSSION

The Trustee objects to confirmation of Richard's Plan, arguing that the Plan unfairly discriminates among the unsecured class of creditors in violation of 11 U.S.C. § 1322(b)(1), because Richard proposes to pay $36,744.00 on his student loans over the life of his Plan,[1] while the other 65% of Richard's unsecured creditors will receive nothing. Discrimination among classes of unsecured claims is governed by 11 U.S.C. § 1322(b)(1) which provides that a plan may "designate a class or classes of unsecured claims . . . but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." The Ninth Circuit Bankruptcy Appellate Panel ("BAP") noted: "By its own terms, § 1322(b)(1) allows for discriminatory treatment among classes of creditors, as long as that treatment is not unfair." *Labib-Kiyarash v. McDonald (In re Labib-Kiyarash)*, 271 B.R. 189, 192 (9th Cir. BAP 2001) (citing *In re Sperna*, 173 B.R. 654, 658 (9th Cir BAP 1994)). In *Labib-Kiyarash*, the BAP held that a debtor may use 11 U.S.C. § 1322(b)(5) to maintain long-term student loan payments at the contract rate while curing any arrearage through the plan, provided that the plan satisfies the test for unfair discrimination under § 1322(b)(1) set forth in *Amfac Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510 (9th Cir. BAP 1982). *Labib-*

---

[1] The attachments to HHS' Proof of Claim indicate that Richard made student loan payments totaling $4,045.00 during the five-year period preceding his bankruptcy petition date.

*Kiyarash*, 271 B.R. at 195.

Richard does not indicate whether he is attempting to cure a default or arrearage in student loans, but it is obvious from the record that Richard is not current on his student loan payments. However, the $36,744.00 that Richard proposes to pay to HHS over the term of his 60-month Plan is not sufficient to make Richard's $850.00 student loan payment. In *Wolff* the BAP recognized that "there will be occasions where unsecured claims might be classified and treated differently, even though the legal character of the claims is identical and the treatment is discriminatory, but not unfairly so," and adopted four factors to consider when determining whether discrimination is "unfair":

> (1) whether the discrimination has a reasonable basis;
> (2) whether the debtor can carry out a plan without the discrimination;
> (3) whether the discrimination is proposed in good faith; and
> (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Wolff*, 22 B.R. at 512; *In re Labib-Kiyarash*, 271 B.R. at 192. This Court followed the *Wolff* factors in *In re Carlson*, 19 Mont. B.R. 390, 393, 276 B.R. 653, 655-66 (Bankr. D. Mont. 2002). However, in *Carlson*, the Court cautioned that "due to the factual nature of the analysis required under the *Wolff* test and the fact that such test does not provide a great degree of predictability or guidance, the Court is still of the belief that the determination of whether discrimination among creditors is unfair must be made on a case-by-case basis." *Carlson*, 19 Mont. B.R. at 396, 276 B.R. at 658. The debtor has the burden of proving that the separate classification does not unfairly discriminate against the other unsecured creditors. *In re Labib-Kiyarash*, 271 B.R. at 195; *Carlson,* 19 Mont. B.R. at 396, 276 B.R. at 658.

The first *Wolff* factor is whether the discrimination has a reasonable basis. In the instant

case, Richard argues that he has satisfied the first prong of the *Wolff* test because "the absence of the discrimination will impair the Debtor's fresh start as the Debtor will be faced with a non-dischargeable obligation which he will not be able to repay given his age, his health, his ability to earn income, and the remaining amount due to the Department." By itself, nondischargeability of a claim such as a student loan does not provide a reasonable basis for discrimination. *Carlson*, 19 Mont. B.R. at 394, 276 B.R. at 658; *Labib-Kiyarash*, 271 B.R. at 196. In order for discrimination to have a reasonable basis it must advance the purposes behind Chapter 13. *Carlson*, 19 Mont. B.R. at 394, 276 B.R. at 657; *Sperna*, 173 B.R. at 658. In *Sperna*, the BAP noted the purposes behind Chapter 13 included affording debtors a fresh start, protecting assets and discharging obligations not excluded from discharge, while at the same time maintaining a balance with other Congressional policy considerations. 173 B.R. at 659. One of those public policy considerations established by Congress is that student loans be repaid. *Id.*; *see also In re Sullivan*, 195 B.R. 649, 655 (W.D. Tex. 1996).

The BAP noted that factors such as special provisions for the collection of student loans "might be relevant" to justify disparate treatment, but the debtors in *Sperna* did not present any evidence demonstrating that such factors could affect their plan. *Sperna*, 173 B.R. at 659. Likewise in *Carlson*, the debtors offered absolutely no basis for their desire to discriminate in favor of student loans during the last 2 years of a 5-year plan. 276 B.R. 653. By comparison, in *In re Jorgensen*, Case No. 04-62076-13 (Bankr. D.Mont. Oct. 28, 2004), this Court found that a debtor's proposed discrimination had a reasonable basis where the debtor testified that she was current on her student loan payments, and that if she did not continue to make her regular student loan payments, the student loan creditor would increase her interest rate, impose penalties and

8

fees, and might call her entire loan due, garnish her wages, execute against her checking account and tax refund, and contact credit reporting agencies. Similarly, in *In re Demarais*, 20 Mont. B.R. 272, 276-77 (Bankr. D.Mont. 2002), the Court found a reasonable basis for the debtor's proposed discrimination where the debtor wanted to remain current on his student loan debt and emerge from Chapter 13 with a clean credit history so he could qualify for a home loan.

Richard's sole basis for his proposed discrimination is that he does not know if he will live or work long enough to repay his student loan debt. Richard is a 53-year old individual who earned gross income of $217,034.00 in the twelve months prior to his bankruptcy filing. This Court is not in a position to speculate on how long Richard will live or work and cannot speculate on Richard's future earning potential. Thus, Richard's argument is that because of his diabetes, hypertension, high blood pressure, sleep apnea, and weight issues, he does not want to have a large non-discharged student loan debt at the end of his Plan term.

The problem with Richard's argument is that he failed to link his health issues to his life span or his ability to earn a respectable wage after the completion of his Plan. Richard testified that he will not continue to work in emergency medicine because of the high stress, but that certainly does not preclude Richard from working in other areas of the medical field, such as family medicine. What this case boils down to is a desire by Richard to pay his non-dischargeable debt, under the protection of bankruptcy, and discharge his other unsecured, dischargeable debt. Consequently, this Court concludes that Richard's proposed discrimination does not advance the purposes of Chapter 13, *Carlson*, 19 Mont. B.R. at 394, 276 B.R. at 657; *Sperna*, 173 B.R. at 658, and thus, Richard has not satisfied the first prong of the *Wolff* test, showing the discrimination has a reasonable basis.

Factor two of the *Wolff* test considers whether the debtor can carry out a plan without the discrimination. In *Carlson* the Court noted that the debtors could carry out the plan without the discrimination, unlike the debtor in *In re Benner*, 146 B.R. 265 (Bankr. D.Mont. 1992). 276 B.R. at 659-660. During examination, the Trustee elicited an admission from Richard that he could make plan payments without the separate classification of student loan debts. Moreover, Richard further acknowledges in his post-hearing brief that his "Plan can be carried out without the discrimination and that the discrimination may not be directly related to the rationale of the discrimination[.]" That admission is determinative in this case with respect to factor two of the *Wolff* test.

As to factor three, the BAP instructs that "an appropriate view of good faith under the *Wolff* test is whether the discrimination involved furthers the goals of the debtor, satisfies the purposes behind Chapter 13 and does not require any creditor or group to bear an unreasonable burden. For example, if the plan were being used to effectively accelerate payments on the loans at the expense of the unsecured creditors, such discrimination would be in bad faith." *Sperna*, 173 B.R. at 660; *Carlson*, 19 Mont. B.R. at 395, 276 B.R. at 657.

Richard's Plan does not propose to maintain his regular long-term monthly student loan payments, which payments were in default long before Richard sought protection under the Bankruptcy Code. Richard does, however, propose to increase his payments to HHS almost ten-fold (approximately $612.40 per month under his Plan) over what he was paying HHS, on average, for the 60 months prior to his petition date (roughly $67.42 per month). Richard's proposed discrimination effectively accelerates payments on the student loan debt at the expense of the other unsecured nonpriority creditors. Moreover, the unsecured creditors in this case, who

Richard proposes to pay nothing, would be much better off if this case was proceeding under Chapter 7 because based upon Richard's Schedules B and C, said creditors would receive approximately $25,618.51, less the applicable trustee fees.  Based upon the foregoing, the Court finds that Richard has failed to satisfy the third *Wolff* factor by showing that the discrimination is proposed in good faith.

The final *Wolff* factor is whether the degree of discrimination is directly related to the basis or rationale for the discrimination.  In *Sperna*, the BAP clarified its distinction between factor 2 and factor 4 as follows:  "The second factor asks whether any discrimination at all is necessary.  If the answer is affirmative, the court must then determine if the amount, or degree, of discrimination proposed is directly related to the reason for the discrimination."  *Sperna*, 173 B.R. at 660; *Carlson*, 19 Mont. B.R. at 395, 276 B.R. at 657.  As with factor two, Richard concedes that he is not able to show that his proposed discrimination is directly related to the basis or rationale for the discrimination.  Richard has the burden of proving that the separate classification does not unfairly discriminate against the other unsecured creditors.  *In re Labib-Kiyarash*, 271 B.R. at 195; *Carlson,* 19 Mont. B.R. at 396, 276 B.R. at 658.  Richard has failed to sustain his burden of proof with respect to factor four of the *Wolff* test.

This Court believes that the determination of whether discrimination among creditors is unfair under § 1322(b)(1) must be made on a case-by case basis.  *Carlson*, 19 Mont. B.R. at 393, 276 B.R. at 658.  The Court has wide discretion in making this determination.  *In re Labib-Kiyarash*, 271 B.R. at 196; *Carlson*, 19 Mont. B.R. at 396, 276 B.R. at 658.  In *Carlson* the debtors offered no evidence in support of their proposed discrimination.  *Carlson*, 19 Mont. B.R. at 399, 276 B.R. at 660.  In *Pearson*, the debtor offered mostly his attorney's argument, without

personal knowledge of the effect default would have without the discrimination.  This case is not unlike *Carlson* or *Pearson*.

Exercising its wide discretion, this Court concludes that Richard has failed to satisfy his burden of proving that the separate classification of Richard's student loan debt does not discriminate unfairly against the other unsecured nonpriority claims.  *In re Labib-Kiyarash*, 271 B.R. at 195; *Wolff*, 22 B.R. at 512.  Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED the Trustee's objections to confirmation filed February 13, 2009, is SUSTAINED; confirmation of Richard's First Amended Chapter 13 Plan filed February 12, 2009, is DENIED; Richard shall file a further amended Chapter 13 plan on or before March 24, 2009; and a hearing on confirmation of Richard's further amended Chapter 13 plan shall be held **Tuesday, April 21, 2009, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

12